Next case, TTC Illinois, Tom Via Trucking v. The Workers' Compensation Commission, 5-0-8-0-6-4-4. Counsel, please. May I please the court? Good morning, Your Honor. My name is Greg Cook. I represent the appellant, TTC Illinois, Tom Via Trucking in this matter. There are two issues before the court this morning. The first is whether the court erred in upholding the Commission's decision to reinstate these two cases. The second is whether the circuit court erred in upholding the Commission's decision that the petitioner's 2005 surgery was casually related to his 1988 accident. There is no question about the 8-F total disability? That has not been raised in my appeal, Your Honor. Counsel, with regard to the notice, your criticism of the claimant's petition to reinstate was a failure to set forth a date upon which they would be heard in compliance with the section, correct? Correct, Your Honor. We do not question the administrative rules, 7-0-2-0-9-0, specifically indicate that a petition to reinstate should be filed within 60 days of the dismissal. The record is clear that that was done. We do not dispute that. The rules are also very clear, though, that in addition to filing the petition to reinstate and as part of the petition to reinstate, the petitioner must list a date for which he plans to appear before the arbitrator to hear the petition. I think that's true, but can a party waive the statutory provisions designed for its benefit, and wasn't that waived by the attorney agreeing to reinstate? Your Honor, there are two parts of 7-0-2-0-9-0 as far as the notice requirements. The first is, as indicated in the rule, the petition must include the date to which it would be heard. The second part is that notice must be served pursuant to 7-0-2-0-7-0, which includes the administrative rules as far as service of process and the notice of motion. All very true, but can it be waived? The second part of that certainly can, Your Honor. The rules are clear, and 7-0-2-0-7-0 indicates that any requirements of service notice can be waived pursuant to the stipulation of the parties. The portion of 7-0-2-0-9-0 that indicates that a date must be given by the petitioner for it to be heard not only gives the parties notice, but also ensures that the petition to reinstate will be considered by the court and it won't result in delay, as evidenced in the first district's decision in Banks. So why did the attorney agree to reinstate it then? Why did he agree to waive that? There are two issues regarding that, Your Honor. The first, as far as the letter included in the appendix from Ms. Wilson dated October 31, 2006, that is well beyond the 60 days allowed to file the petition to reinstate as indicated in Rule 7-0-2-0-9-0. In fact, it's almost 15, 16 months after the cases were dismissed in April 2005, and at that point, if the waiver did occur at that point, Your Honor, it was too late in essence that there hadn't been, because the 60 days had elapsed quite some time ago. Secondly, Your Honor, Why can't the disbonded waive it? You see, as a matter of law, it cannot be waived. Is that your argument? Your Honor, there are two parts to that. The first, there certainly is a matter of law and the rules indicate that the notice, the petition to file the notice of motion can be waived. The rules are very clear on that. The rules do allow that parties made by stipulation have a case reinstated. That didn't occur in this case, Your Honor. Part of that rule indicates that the stipulation must be filed with the commission. If the stipulation occurred, there was never such a petition, the stipulation was never entered with the commission, and evidenced by the fact that we're here today, Your Honor, the stipulation to reinstate the case. I think what you're seeing is that you seem to be playing gotcha. You've got a permanent total here. As soon as you get with the permanent total, you pull a gotcha on the reinstatement. The attorney representing the petitioner represented to the arbitrator that the respondent's attorneys agreed to reinstatement as early as June of 2005. This isn't something that just happened with the letter. This is something that the letter came in October of 2006, but the attorney represented to the arbitrator that the agreement took place in June of 2005. Your Honor, I have no personal knowledge regarding that reinstatement in 2005. I will say that there is no evidence in the record regarding that. The attorney told the arbitrator that, and the arbitrator accepted that. The arbitrator said, you thought you had it by stipulation, it was at one point, and now it's not. Is that correct? And Tom Villa's attorney said basically with respect to that, there never was a meeting before the judge to discuss the issue. He didn't deny that there was an agreement. Did the attorney misrepresent to the arbitrator? No, I'm certainly not alluding to that, Your Honor. The review of this case is a matter of law, and the commission and administrative rules are clear, and as evidenced by the appellate court's decision in Banks, that part of the reinstatement, it's necessary to have that date. Is that jurisdictional? I'm sorry? Is that jurisdictional? For the reinstatement? Yeah. I believe that it must be heard, either it must be heard, or the stipulation as required by the rule must be filed with the commission. It's jurisdictional that the petition must have the date of hearing in it. If it doesn't have it, the commission doesn't have jurisdiction to reinstate, is that what you're saying? Even if the petition is filed timely? Your Honor, the court in Banks indicated that if the petition to reinstate did not include the date, then the petition to reinstate was not proper. Did Banks decide that as a matter of law? Yes, Your Honor. He did? Yes. They held that the rule... Did not abuse its discretion, is what the Banks court held. It did not hold that it was a matter of law. They said that the court did not abuse its discretion in denying reinstatement. Did not say that it was a matter of law, nor did they say it was jurisdictional. If it's jurisdictional, there is no discretionary issue. Your Honor, I believe that goes to whether or not this is, as evidenced in the briefs, there is some question as to the standard review before the court this morning. No, I'm talking about Banks. You're relying on Banks to say that it must be there, and you're saying that as a matter of law, and it's jurisdictional. But that's not what the Banks court held. The Banks court held that they did not abuse their discretion in denying reinstatement. That presupposes they had discretion. And if they had discretion, it could not have been a jurisdictional issue. And I appreciate that, Your Honor. I do believe that the rules and also the court in that is clear that with the petition, there must be the date filed. So the Banks court was wrong when they said they didn't abuse their discretion. They should have said no jurisdiction. I would submit that to you, Your Honor. And the reason I would submit that to you is that the appellate court has indicated in the case of Moore v. The Industrial Commission that when construing the rules and regulations promulgated by the commission, that that should be used the same rules such as statutory construction. And then the Supreme Court of this case, or excuse me, of this state in R.D. Masonary indicated that in matters involving statutory construction, that it's a matter of law and that's a... We don't, in a matter of statutory construction, defer to the interpretation or grant deference to the interpretation placed on it by the agency who is charged with the responsibility of enforcing it? I would submit, Your Honor, that you do give deference to that decision. You consider that decision, but ultimately it's a review de novo. Your justices have the opportunity to review it. Okay. With the claims as indicated in the prior discussion, there were two claims filed on September 11, 2000. Those were dismissed pursuant to Arbitrator Dibble's award on April 25, 2005. As indicated, there's no question there's a petition to reinstate, which was filed on June 23, 2005. But as we've discussed, it did not meet the rules of 7020.90. Subsequently, a motion in order was filed on October 31, 2006, including the petition to reinstate. However, that was well past the 60 days allowed by the rule. In fact, the motion in order dated October 31, 2006 does not meet the requirements of 7020.70 in that the certificate of service on that notice of motion in order is dated on October 31, 2006, the same day that the motion indicated that it was going to be heard. The rule requires that in motions other than 19B motions that there would be at least three days provided for service. Secondly, the notice of motion order from October 2006 indicates that it was going to be heard in Collinsville. The rules are clear that when petitions to reinstate claims are at issue, that they are to be heard on the same docket as the claims that have been dismissed. These cases were docketed in the Whittington-Herron docket. Who DWP'd them, which arbitrator? Arbitrator Dibble. Who heard the reinstatement? Arbitrator Dibble. So the place where he hears it is jurisdiction, according to you? Your Honor, it wasn't even heard on that October 31, 2006. It wasn't heard until March of 2006. I don't care when it was heard, but Dibble, DWP'd him and Dibble reinstated him. Correct. So it was the same arbitrator? Yes, sir. So the place where he does it is of import to you? As far as the notice of motion in order, Your Honor, it did not include the correct date. I think the fact that Arbitrator Dibble did ultimately hear it and did ultimately hear it in Herron, where these were docketed, that puts that issue moved as far as the jurisdiction. I do agree with you in that regard, sir. The petition to reinstate was not heard until March of 2007, approximately two years after the claims were dismissed. As evidenced by the court and banks, this is the exact reason why the rules require a date to be heard, be filed with the petition to reinstate, because there is a delay of almost 23 months there, which can result in potential prejudice to the employer. The banks court does not indicate that the employer must prove prejudice. In fact, the law is clear that in petitions to reinstate, it is the petitioner's burden to prove the facts with the petition to reinstate. Except for one very critical difference between this case and banks. Again, unlike in banks, it's clear that the delay in calling the petitions to reinstate before the arbitrator was the product of an agreement to which the respondent's attorney was a party. Your Honor, if there had been a stipulation that took place, Your Honor, that was never filed with the court, as far as the commission was concerned, these cases were dismissed for 23 months prior to the reinstatement of the parties. And that is what led to that delay. There was no indication that the claims had been reinstated for the commission, that the stipulation that is noted that can occur in 7020.90D was not filed with the commission as was required. So what do you make of the fact that the reinstatement was agreed to on some quote-unquote unspecified convenient date by the respondent's attorney? Does that enter into the mix at all, in your mind? Two issues regarding that, Your Honor. If that occurred, the fact of the matter is that was never entered into on an unspecified date. There was never the stipulation filed. When this was finally decided before Arbitrator Dibble, it was certainly contested at that point, as is evidenced here today, and the stipulation as required by the rules was never filed. The claims were never in fact reinstated until that March of 2007 date, when there was, as evidenced by the record, some dispute as to whether or not they should be reinstated. Let me ask you another way, a very pointed question. Does anything the respondent's attorney does have any bearing in anything, in your mind? Or should all of that be just ignored? No, sir. I think if the respondent, had there been an agreement and the stipulation had been entered into and filed with the commission as required by the rules, then that could or should have an effect on the outcome. But the fact of the matter is, and the record indicates that that's not what occurred in the current case. Perhaps in their formality, then, whatever the attorney does and agrees to is irrelevant. That's obviously what you're saying. No, I respectfully disagree, sir. I believe that in this case, what happened is, if you have that agreement, then it is up to the petitioner. It's the petitioner's burden to have the case reinstated. And that never occurred in this instance, until 23 months later in March of 2007. Can I ask you, you had a second issue in this case. Yes, Your Honor. Dealing with, which I don't want to get into, but I do want to get into something. Rule 342 requires you to file an appendix to the record of appeal. Is that correct? Yes, sir. And you filed it. Yes, sir. It's 28 entries and it's a page and a half. That's what you filed, right? Pages A35 and A36 of your appendix. Your Honor, I actually have an appendix filed, Mark, that has all of the Look at the bottom page of your appendix. Go to page A35 and A36 of your appendix, which purports to be a table of contents with page reference to the record of appeal. Is that correct? Yes, sir. Has 28 entries in it? Yes, sir. Do you count them? Do you have any idea how long the record is in this case? It is approximately 3,500 pages. That's right, 12 volumes. Do you think these are the only 28 entries in that record? No, certainly they're not. What does the rule require? You must list every pleading, every document. You have to list the page numbers. You dumped on us the responsibility of going through this record and examining all of this medical to address your second issue. The first issue on the waiver, that was easy. That was only a couple of pages. But it wasn't a couple of pages for the other issue. We had to scour 3,500 pages because you didn't give us a record on appeal. This is silly. I apologize for that, Your Honor. Well, I strongly suggest that the next time you take a look at 342, and it specifically requires every document to be listed in the record on appeal. Yes, sir. Counsel, your time is up. You have time on rebuttal. Thank you. Counsel, please. Mayor, please report to your honors. My name is David A. Nestor, and I represent Donald Keene, who is the appellee and also the employee in this case. Did you represent him at the time the applications were filed? I guess I did, Your Honor. You didn't do a very good job, it doesn't look like. Your Honor, on which issue? On the following up the application, getting it dismissed five years later because of fear of the press. Your Honor, if I may explain that to you so this court doesn't think I'm completely incompetent. Donald Keene was involved in two injuries, one in 1998 and one in 1999. The 1998 injury was a low back injury. The 1999 injury was a multiple injury with a brain injury that made him totally incapacitated. While the workers' compensation suit was filed and ongoing, there's an ongoing third-party suit. While the matter was ongoing, multiple letters were written to the commission asking that the commission continue the matter on numerous times while the third-party suit was ongoing. When the matter was dismissed on 4-25-05, the record indicates that on 4-8-05, I did write a letter to the commission and asked the matter be continued again. That letter did not make it to Judge Dibble's record, although it did make it to the commission, and Judge Dibble dismissed the matter on 4-25-05, but another letter was sent asking for a continuance. Hence, when the matter was dismissed on 4-25-05, I promptly called Shelley Wilson, who was the respondent's attorney, and got an agreement and a stipulation that whoever appeared before Judge Dibble would get the matter reinstated. It was basically a gentleman's agreement among attorneys, orally, and it is verified by the record that that's what would be done. It was about two years later that you finally did that. Yes, Your Honor, that's correct. Is there some letter memorializing this agreement? Your Honor, there is no letter memorializing that agreement because it did not become a problem until she wrote a letter on November 3-06 stating that she, after talking with her adjuster, she will have to abstain from that agreement stipulating to the reinstatement. Well, her letter stipulation came in October. Pardon me? She sent you a letter in October. No, I said it didn't become a problem until November 3rd when she withdrew that stipulation. But there was a stipulation to reinstate the case that existed from June of 2005 through when the matter was reinstated later. Just so this Court knows, first of all, Mrs. Wilson is still a member of the firm. She's never filed an affidavit saying that that was not the agreement. And, in fact, Mr. Pelican did admit in the record, as this Honorable Court just pointed out, that that stipulation did exist. Well, I think his argument is it doesn't make any difference. His argument is he didn't put the Patriot hearing in the petition, and therefore Dibble had no jurisdiction to reinstate. I think that's his argument. Well, if it is his argument, it's the first I've heard of it. In the appeal and in the written argument, his argument is that Banks was controlling, and first he said that Banks states that there is a trial de novo, and Banks specifically states the Commission's interpretation of its rules is entitled to deference and will be set aside only if it's clearly erroneous, arbitrary, or unreasonable. And so he's incorrect on that. And he also states that Banks stands for the proposition that this matter should not be reinstated, and he's incorrect on that. Banks only considered procedurally whether a petition to reinstate was filed correctly. And in the Banks case, nothing was ever considered about a stipulation, an oral agreement, about any type of stipulation to reinstate the matter. So Banks has no bearing on this matter at all, other than to stand for the proposition that this court can only overturn Judge Dibble's ruling if there is an abuse of discretion. Furthermore, just in case this court isn't painfully aware, there was a letter that conferred the consent of Shelley Wilson, and again I wrote to Judge Dibble to try to get the matter reinstated. And then Shelley Wilson also wrote a letter to Judge Dibble stating that she had no objection to the reinstatement. One of counsel's arguments is that even after she wrote the letter in withdrawal, we then refiled a petition to reinstate that did not meet the notice requirements. That was because on October 31st of 2006 was the date that she wrote me the letter and we were going to have the matter heard in front of Judge Dibble. The matter was continued until the March 14th, 2007 date by Judge Dibble. But the matter, we agreed that we would go down and hear the matter on October 31st, 2006, hence her letter on October 31st, and hence my filing of the motion to reinstate on October 31st, 2006. So clearly Judge Dibble found that there was a stipulation amongst the parties. I've heard nothing by way of affidavit or by case law that the parties can't stipulate to reinstate the matter, and Judge Dibble made a correct ruling. I have not heard anything today that would indicate that that ruling was erroneous. Now on to the low back issue. The court in this matter found that Mr. Keene's low back injury in 1998 and subsequent surgery in 2005 was directly related to the 1998 injury, and the brief pointed out by the appellant contained several errors. First of all, their contention is that back in 1998 there was no injury to the L5-S1 disc. I have cited to this court and can give this court very specific information that in 1998 there was an injury to the L5-S1 disc. First of all, Dr. Froehling, the injury occurred on 5-28 of 1998. The employee went to the emergency room that date and complained of severe low back pain and radiation into the left leg. He saw Dr. Froehling on 7-15 of 1998, and Dr. Froehling interpreted an MRI of 6-11-98 and stated, quote, there is a bulge at L5-S1 that might be a small herniation. And in fact, the radiologist's interpretation of that MRI on 6-11-98, less than two weeks after the accident, indicated, quote, there is a small central disc herniation at L5-S1, narrowing at L5-S1, and desiccation at L5-S1. These facts were totally ignored in Appellate's brief. Was there any contrary medical evidence presented by the other side? There is not. The only thing they point out is Dr. Wayne's report, and I would like to point out even Dr. Wayne's report of October 20, 1998, indicates, quote, that there is an annular prominence noted at L5-S1. So even Dr. Wayne's report indicates a prominence. He may not state a disc, but I would like to point out to this court that Dr. Wayne saw the employee on one occasion on October 28, 1998. He gave no opinion that the surgery was unrelated to the incident. He gave no opinion that the low back injury was unrelated to the incident. And in fact, the only evidence before this court is Dr. Froehling's notes and report which specifically states, the 98 injury never fully resolved. He returned to work with continued complaints of lumbar pain that were significant. There is demonstrative evidence of injury to L4-5 and L5-S1 discs at that time. Over a period of time, his lumbar condition deteriorated to the extent that a disc herniation developed at L5-S1, which required surgical intervention. I believe that the 98 injury played a significant role with respect to the causation of the disc herniation and is related to the need for surgery in 2005. Hence, the manifest weight of the evidence in this case is that the 98 injury did cause the herniation, as there is evidence back in 98. It did deteriorate over time, as Dr. Froehling stated, and it led to the 2005 surgery. There is nothing to controvert that, and in fact, Dr. Froehling specifically states in his record that there is no intervening injury that injured the low back. Of course, we have the head injury in 1999. That's all I have. Thank you. I would entertain any questions. Thank you, Tom. Rebuttal, please. Thank you, Your Honor. I would like to address the second issue regarding the medical evidence and the L5-S1 mastectomy that occurred in 2005. There is an indication on an MRI from June 1998 that the report indicates herniations at L4-5 and L5-S1. Certainly, we cannot dispute that. However, the MRI report does indicate that the MRI was limited due to the petitioner's motion. A CT myelogram that occurred on July 20, 2008, specifically indicated that there was no definitive evidence of disc herniation, pressing on a nerve element, and surgery was not advised. The treatment in 1998 focused on the L4-5 disc, including injections. Subsequent to the petitioner's second accident in 1999, there was a lumbar MRI in 2002, on July 19, 2002, which can be found in the record at page 269 that indicates, quote, L5-S1 level demonstrates no obvious abnormality except for disc desiccation. The petitioner's complaints when he initially saw Dr. Froehling in 1998 were of low back pain and also left-sided sciatica is what Dr. Froehling diagnosed him with. In June of 2005, when the petitioner returned to Dr. Froehling, he indicated he was having an increase in low back pain, and now the symptoms have changed to the right side. The symptoms that Dr. Froehling ended up completing the laminectomy and discectomy on in July 2005 were for compression of the nerve root on the right L5-S1. In 1998, there had been no indication of symptoms. Dr. Froehling's records state that the petitioner indicated that his symptoms were on the left side at that time. In June of 2005, Dr. Froehling noted that there had been on June 29, 2005, he stated that interval findings suggested it was going to be hard to make a casual relationship for him. The petitioner points out in his brief that the next day the petitioner's wife brought an MRI in. They say 1999. From the record, it appears that that would have probably been the 1998 MRI, which specifically states that there was some motion there, and a CT myelogram just a month later showed that there was no abnormalities seen at L5-S1. I would present to you that the commission's finding is against the manifesto weight of the evidence, as it wasn't until March of 2007, almost eight years after the accident, that Dr. Froehling made his opinions regarding the casual relationship with the surgery. I noticed in your brief on the second issue that you don't cite any cases in support of your argument. Your Honor, I believe this is a case that is simply a manifest way to the evidence, and very fact-specific as far as the credibility of Dr. Froehling, and his records throughout which document interval changes, and as he suggested in June of 2005, no casual relationship, whereas it's March of 2007 when he now makes for the first time the indication of his belief that the surgery is related to the 1998 accident. It was asked on questioning of the petitioner's counsel if there is any evidence to dispute Dr. Froehling's opinions, and it's our position that yes, Dr. Wayne's IME in 1998 indicated that the petitioner had a lumbar strain, and that he could be released to return to work. The record indicates that he did have ongoing problems, low back pain, consistent with some permanent partial disability associated with the lumbar strain, and it's our position that the manifest weight of the evidence indicates a lumbar strain is the appropriate finding for the 1998 injury. Briefly regarding the first issue, petitioner's counsel pointed out that there had not been an affidavit submitted into the record from Ms. Wilson. I would like to indicate that the petitioner's counsel had every opportunity to include evidence regarding the oral stipulation, including an affidavit documenting the conversation that he could have presented, but that wasn't included in the record. He did tell the arbitrator that. In the arbitrary comment, your attorney didn't deny it at all. No, and, Your Honor, as I indicated on my initial questioning, I have no personal knowledge one way or the other as to whether or not that occurred. Let me ask you this. Were you authorized to act on behalf of your client today? Yes, sir. Was she authorized to act on behalf of your client when she had these conversations with Mr. Nestor? At the time of the October 2006 letter that she wrote, yes, they had authorized that, and then as evidenced by the November 3rd, 2006, they took that back. But, again, that's over 17 months after the reinstatement took place. Thank you, counsel. Your time is up. I thank you all very much for your time today. Court will take the matter under its own.